IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

_____ FILED  _____ ENTERED
_____ LODGED  _____ RECEIVED

JAN 3 1 2006

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

JFM 06CV0259

| | |
|---|---|
| MAGGIEMOO'S INTERNATIONAL, LLC <br> 10025 Governor Warfield Parkway <br> Suite 301 <br> Columbia, MD 21044 <br><br>       Plaintiff <br><br>   v. <br><br> AKX COMPANY <br> 316 Pintail Court <br> Carmel, IN 46032 <br><br>    and <br><br> SIMON GAO <br> 316 Pintail Court <br> Carmel, IN 46032 <br><br>    and <br><br> ELIZABETH ZHANG <br> 316 Pintail Court <br> Carmel, IN 46032 <br><br>       Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> *   Civil No. <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*

**VERIFIED COMPLAINT FOR PRELIMINARY
AND PERMANENT INJUNCTIVE RELIEF AND OTHER RELIEF**

**INTRODUCTION AND SUMMARY**

1.     Plaintiff, MaggieMoo's International, LLC ("MMI"), by its undersigned counsel,

sues Defendant AKX Company ("AKX"), a former franchisee of MMI, whose two

MaggieMoo's Franchise Agreements ("Franchise Agreements") have just been terminated.

(Copies of the Franchise Agreements are **Exhibits 1 and 2** hereto.)  MMI also sues Simon Gao,

aka Xiaoming Gao ("Gao") and Elizabeth Zhang, aka Xiaoli Zhang ("Zhang"), the principals of

AKX. Gao is also the guarantor of AKX's obligations to MMI, and he and Zhang are personally obligated under various post-termination obligations of AKX. Upon information and belief, they are the parties actively involved in the operation of the two franchises at issue here.

2.     The terminations resulted from AKX's repeated, serious, and uncured defaults of its obligations under the Franchise Agreements. Because AKX and the other defendants have simply ignored many of these obligations and MMI's communications and efforts to encourage them to cure the defaults, there is a substantial likelihood that they will ignore the terminations, and therefore will ignore their de-identification, non-competition and other post-termination obligations to MMI in the Franchise Agreements. Hence, MMI is threatened with and will suffer irreparable harm unless they are enjoined and required to honor these post-termination obligations. This and other courts have consistently upheld a franchisor's right to protect its trademarks and servicemarks, and have held that irreparable harm inevitably follows from a violation of these marks by a former franchisee. Similarly, this and other courts have consistently upheld a franchisor's rights to enforce the ex-franchisee's post-termination non-competition obligations, in order to prevent irreparable harm to the franchisor and its franchise system.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1331, in that this is an action arising under one or more of the laws of the United States of America, and further has jurisdiction over the subject matter of this action under and by virtue of 28 U.S.C. § 1332, in that this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4.     This Court also has jurisdiction over the subject matter of this action under and by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1338(b), in that this action presents one or more claims of unfair competition that are joined with one or more substantial and related claims under the trademark laws.  This Court also has supplemental jurisdiction over the subject matter of the non-federal claims for relief asserted in this Verified Complaint under and by virtue of 28 U.S.C. § 1367.

5.     Personal jurisdiction and venue are required exclusively in this judicial District by the mandatory and exclusive choice of forum provision in paragraph 24.4 of the Franchise Agreement.

6.     Paragraph 24.2 of the Franchise Agreement expressly provides for litigation to enforce the franchisor's rights concerning its marks and the non-competition obligations.

## THE PARTIES

7.     Plaintiff MMI is a Delaware limited liability company with its principal place of business at 10025 Governor Warfield Parkway, Suite 301, Columbia, Maryland 21044.  It conducts its business under the names "MaggieMoo's" and "MaggieMoo's Ice Cream and Treatery."

8.     MMI was organized and chartered as a Delaware limited liability company on November 1, 1996.  On November 25, 1996, it acquired many of the assets of MaggieMoo's Franchise Company, Inc., including existing franchise agreements, trademarks, and proprietary recipes, with the intent of franchising and operating MaggieMoo's ice cream stores under the "MaggieMoo's" name and mark.  It began to offer franchises for MaggieMoo stores in August 1997. As of December 31, 2004, it had 141 franchised MaggieMoo's stores in 31 states and the District of Columbia and three company-owned MaggieMoo's stores.

3

9.     MMI owns a distinctive format and system (the **"System"**) relating to the establishment and operation of frozen dessert retail businesses, which operate at stores that display its interior and exterior trade dress (**"MaggieMoo's Stores"**), that operate under Proprietary Marks (as defined below), and that are primarily engaged in the sale of certain products. MaggieMoo's Stores sell ice cream, ice cream cakes, milk shakes, sundaes, smoothies, frozen yogurt, frozen desserts, and sorbet (the **"MMI Products"**); toppings, confections, beverages, ice cream cones, bakery items, candy, and other food items, and other complementary and compatible products approved by MMI for sale in MaggieMoo's ice cream stores (the **"Approved Products"**); and non-food items, which may include T-shirts, hats, caps and other apparel, dolls, toys, coffee mugs, glasses and other accessories bearing the Proprietary Marks (defined below) or affiliated with the System and/or MMI (the **"Accessory Products"**). MaggieMoo's Stores feature a chilled counter where MMI Products are blended with and/or served with Approved Products that are selected by the customer. The (MMI Products, the Approved Products, and the Accessory Products are referred to herein as **"Products."**)

10.     The System includes distinctive interior and exterior decor, color scheme, design, and furnishings; specialized menus; proprietary recipes and formulas for food products; uniform standards, specifications, procedures for management and inventory control; training and assistance; and advertising and promotional programs. The System is identified by certain trade names, service marks, trademarks, logos, emblems, and indicia of origin for use in connection with the System including but not limited to "MAGGIEMOO'S" (Federal Registration No. 2208567) and "MAGGIEMOO'S ICE CREAM AND TREATERY and Design" (Federal Registration No. 2282514) (the **"Proprietary Marks"**). MMI has invested over $10 million in development and promotion of its System and its Proprietary Marks.

4

11.     MMI operates and franchises others to operate MaggieMoo's Stores that offer all or substantially all of the MMI Products and the Approved Products, and a representative selection of Accessory Products.  MaggieMoo's Stores are usually located in shopping centers, shopping malls and urban locations.

12.     AKX, upon information and belief, is an Indiana corporation, with its principal place of business in Indiana, and Gao and Zhang are residents of Indiana.   AKX was the MMI franchisee at MaggieMoo's store # 14-206 in Indianapolis, Indiana, and at MaggieMoo's store # 14-207, in Noblesville, Indiana.  The Franchise Agreements were each dated March 9, 2005. On that date, Gao signed personal guarantees, **Exhibit C-2** to each Franchise Agreement, guaranteeing AKX's obligations under Sections 8, 9, 14, 16 and 17 of the Franchise Agreement, which are the obligations at issue here.  The Franchise Agreements were terminated by MMI coincident with the filing of this suit, by reason of AKX's repeated defaults of its basic obligations under the Franchise Agreements and its failures to cure the defaults, notwithstanding that MMI accorded it more opportunities to continue its franchises than required by the Franchise Agreements.

13.     Defendants are substantially unlikely to honor their post-termination obligations to MMI.

## THE FRANCHISE AGREEMENT AND THE
## DEFENDANTS' DEFAULTS AND TERMINATION

14.     The Franchise Agreements provide the franchisee the rights and obligations incident to operation of a MaggieMoo's store, under the MaggieMoo's System and the Proprietary Marks.  Central to the goodwill and success of the MMI System is the franchisee's

observance of the standards and obligations required in the Franchise Agreement and MMI manuals.

15.     The tool used by MMI to measure franchisees' brand, service, operational and marketing compliance with its standards is the detailed Service Excellence Evaluation ("SEE") report. It provides the franchisee a comprehensive look at the quality of its or her or his operation, whether the operation satisfies MMI's standards, and what must be done to improve the franchisee's operations. There are sections involving operations (Service, Service Area, Production Area) and Marketing. Subsections include Exterior Appearance, Hospitality, Food Quality, and Cleanliness. There are several elements in each subsection. A franchisee must achieve only a 70% score to "pass" a SEE inspection, and failure to pass a SEE inspection is a default under the Franchise Agreement. SEE inspections are conducted on a periodic basis, after several days' notice to the franchisee, by the franchisee's MMI "Franchise Business Consultant" ("FBC").

16.     The SEE Report was revised in early 2005, partly as a result of the influence of franchisees in good standing who wanted MMI to more fully evaluate franchisees and to take action to protect their System and their investments by terminating franchisees who did not live up to System standards, even after being accorded repeated opportunities to do so by MMI.

17.     AKX's performance in SEE inspections has been dismal. Store # 14-206 in Indianapolis failed SEE Reports in March 22, July 27, September 8, and October 24, 2005, and also on January 9, 2006. Its scores on these Reports have varied from a high of 59% to a low of 41%, compared with the 70% minimum needed to pass. The Reports disclose a continuing practice of selling unapproved products, not following approved recipes, using unapproved ingredients for ice cream, failure to comply with brand standards, not dating food practices (a

fool lately issue) and not implementing various required marketing programs. Similarly, store # 14-207, in Noblesville failed SEE inspections on March 9, September 7, and September 27, 2005. Its scores on these Reports have varied from a high of 59.6% to a low of 48%. The Reports disclose sales of unapproved products, failure to follow approved recipes, using unapproved ingredients for ice cream (posing a salmonella problem), not making cakes to specifications, and not implementing various required marketing programs.

18.     The Franchise Agreements provide, to the extent relevant here, for termination by MMI without further notice if a franchisee commits <u>one</u> default, but then fails to cure it (Franchise Agreement, ¶ 15.3), <u>or</u> if a franchisee commits the same default twice in twelve months, even if cured, <u>Id.</u>, ¶ 15.2.9.), <u>or</u> if a franchisee commits any three defaults (the same or different) within twelve months, even if cured, <u>Id.</u>, ¶ 15.2.10. In total, AKX has committed dozens of uncured defaults at each location, both by reason of the SEE inspection failures and the individual violations which contributed to the SEE inspection failures. (The SEE Reports for store # 14-206 are collected in **Exhibit 3** hereto, and the SEE Reports for store # 14-207 are collected in **Exhibit 4** hereto).

19.     MMI's personnel work with franchisees to assist them in correcting failures in their SEE Reports. MMI reminds them that such defaults permit termination of their Franchise Agreements. MMI accorded these Defendants additional opportunities to preserve the franchise rights, beyond what was required by the Franchise Agreements. Nevertheless, their operations continue to fail.

20.     Defendants' failures are particularly striking: MMI has recently received anonymous letters from AKX <u>employees</u>, complaining of the substandard and unsanitary conditions of AKX's operations, poor service, false advertising, sales of expired products, use of

product which spilled on the floor, and refusal to follow the correct recipes, as well as

Defendants' awareness of these conditions, and Defendants' refusal to correct them. All of this

has caused and will cause irreparable harm to MMI's reputation and its franchise system. (See

**Exhibits 5 and 6** hereto; the letters have e-mail addresses which may disclose the employees'

identities to AKX and subject them to retaliation, so those addresses have been whited out. MMI

has retained the originals, however, for the Court's inspection if necessary).

21.     Finally, MMI had no choice but to terminate the Franchise Agreements, by letters

dated January 30, 2006 (**Exhibits 7 and 8** hereto).

## THE POST-TERMINATION OBLIGATIONS

22.     The Franchise Agreements, as is the norm in franchising, provide that, upon

termination, the former franchisee (which includes, among other persons, its officers Gao and

Zhang and guarantor Gao) must cease operating the Store, cease using MMI's Proprietary Marks

and disassociate from the System entirely. It also permits MMI to certain assignment options

concerning the Store Lease, and option to purchase at fair market value the Store furnishings,

equipments, supplies and inventory. (¶¶ 16.1 through 16.10.) It further provides that the ex-

franchisee shall honor a post-termination non-competition obligation (¶ 17.3). The covenant is

limited to only two years and to an area of only five miles from the former franchise location and

from any other existing MMI franchise location.

23.     The pertinent provisions relating to this post-term non-compete are:

> 17.2    Franchisee specifically acknowledges that, pursuant to this
> Agreement, Franchisee will receive valuable specialized training
> and confidential information, including, without limitation,
> information regarding the operational, sales, advertising and
> promotional methods and techniques of Franchisor and the System.
> Franchisee covenants that during the term of this Agreement,
> except as otherwise approved in writing by Franchisor, Franchisee

shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, or corporation:

\*       \*       \*       \*       \*

17.3.2  Franchisee shall not for a continuous uninterrupted period of two (2) years from the date of: (i) a transfer permitted under Section 14, above; (ii) expiration or termination of this Agreement (regardless of the cause for termination); or (iii) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 17.3; either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, partnership, corporation, or other entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) at the Approved Location; (b) within the Territory; or (c) within an area that is within a radius of five (5) miles from any MaggieMoo's Store.

17.3.3.  Franchisee shall not for a continuous uninterrupted period of two (2) years from the date of expiration or termination of this Agreement sublease or assign Franchisee's interest in any lease or sublease for the premises of the Store to a third party for the operation of a Competitive Business.

17.8     Franchisee expressly agrees that the existence of any claims it may have against Franchisor, whether or not arising from this Agreement shall not constitute a defense to the enforcement by Franchisor of the covenants in this Section 17.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees) incurred by Franchisor in connection with the enforcement of this Section 17....

17.9     Franchisee acknowledges that Franchisee's violation of the terms of this Section 17 would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 17.

24.     As this and other courts have held, it is essential to a franchise system to protect

its proprietary marks from unauthorized use and to enforce its non-compete covenants.  Because

9

there is substantial doubt as to whether the Defendants will honor these obligations, MMI is threatened with irreparable harm, necessitating injunctive relief to enforce them. As this and other courts have held, the balance of hardships is very much in MMI's favor, because, while the franchisee must simply abide by the agreement it or he or she signed, if it or he or she does not, and violates these post-termination obligations, the franchisor's "System itself ... is at issue" and that a "failure to grant the injunction here might unravel the franchise system." *ATL International, Inc. v. Baradar*, Bus. Fran. Guide (CCH) ¶ 30,335 (D.Md. 1997) (*ATL* is discussed in and attached to the Memorandum of Law) filed herewith; see *Merry Maids LLC v. Kamara*, 33 F.Supp.2d 443, 445 (D.Md. 1998) ("the often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled" (discussed also in the Memorandum of Law).

## COUNT I

### BREACH OF CONTRACT

25.   MMI  incorporates by reference the allegations of paragraphs 1-24.

26.   The Defendants are substantially likely to violate their post-termination obligations to MMI in ¶¶ 16.1-16.10 and 17.3.2-17.3.3 of their terminated Franchise Agreements, which require, inter alia, cessation of the Store operations, cessation of use of MMI's Proprietary Marks and information and Products, observance of the two year non-compete, and cooperation with MMI in its exercise of its rights under the Store lease and with respect to the Store assets.

27.   To prevent irreparable harm to MMI and its System, the Court should enter a preliminary and permanent injunction enforcing MMI's rights above, and MMI should be awarded damages for Defendants' violations until the date of the entry of the injunction.

10

## COUNT II

### TRADEMARK INFRINGEMENT

28.     MMI incorporates by reference the allegations of paragraph 1-27.

29.     The Defendants' continued use of MMI's registered Proprietary Marks after termination of the Franchise Agreements is likely to cause and has caused confusion and mistake and/or has deceived the public and purchasers regarding the source, origin and nature of his products and services. They are attempting to pass off to the public, to their wrongful profit and advantage, imitations of MMI's licensed services. These actions can only serve to confuse the public as to the source of the products and services sold from the Store, all to the detriment of MMI and its national network of MMI franchisees. Moreover, their use of unapproved products, unapproved ingredients for ice cream, unapproved recipes, and out-of-date products, as products sold under the MMI Marks, is a separate trademark violation, and threatens further irreparable harm to MMI, which will be prejudiced by the sale of any non-conforming or substandard product or the provision of any non-conforming or substandard service under its Marks.

30.     The Defendants have committed the acts described hereinabove with knowledge and with deliberate intent and design to cause confusion, mistake, to deceive, and to trade on the MMI's Proprietary Marks and valuable goodwill attached thereto.

31.     By reason of the foregoing, the Defendants have violated and continue to violate the provisions of the trademark law of the United States, commonly known as the Lanham Act, 15 U.S.C. §1051 et seq., all to MMI's injury. Defendants have willfully infringed the MMI Proprietary Marks in violation of 15 U.S.C. §1114. The harm cannot be fully compensated in monetary damages, and MMI is entitled to preliminary and permanent injunctive relief to enjoin these acts, as provided by 15 U.S.C. § 1116(a). Further, as a consequence of these deliberate and

11

wrongful acts, MMI also is entitled to an award of Defendants' profits and/or of treble damages as provided by 15 U.S.C. §1117(a).

## COUNT III

### FEDERAL UNFAIR COMPETITION

32.     MMI incorporates paragraphs 1 through 31 as if each were fully set forth herein.

33.     The Defendants have engaged deliberately in false designations of origin, false and misleading descriptions of fact, and false and misleading representations of fact in connection with goods and services, in violation of 15 U.S.C., §§ 1125(a)(1) and (a)(2).

34.     Defendants' willful and unlawful acts have caused, and, unless enjoined, will continue to cause, damage and irreparable harm to MMI, its franchisees, and its franchise System. The harm cannot be fully compensated in monetary damages.  A preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 should be entered to enjoin these acts. Further, as a consequence of these deliberate and wrongful acts, MMI also is entitled to an award of Defendants' profits and/or of treble damages as provided by 15 U.S.C. §1117(a).

## COUNT IV

### COMMON LAW UNFAIR COMPETITION

35.     MMI hereby incorporates paragraphs 1 through 34 of the Verified Complaint as if each were fully set forth herein.

36.     The Defendants have committed the tort of unfair competition against MMI, acting unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for MMI's rights and the rights of MMI's franchisees and the public.

37.     MMI has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition.  The harm cannot be fully recompensed in monetary damage,

12

and is irreparable. A preliminary and permanent injunction should be entered to enjoin these acts.

COUNT V

BREACH OF CONTRACT (FUTURE ROYALTIES)

38.      MMI hereby incorporates paragraphs 1 through 37 of the Verified Complaint as if each were fully set forth herein.

39.      Defendants owe to MMI a 6% royalty fee on their monthly gross sales (Franchise Agreements, paragraphs 4.2 – 4.6). Thus, Defendants owe to MMI, as part of the benefit of the bargain, royalties for the remainder of the term of the Franchise Agreements. The remainder of each ten year term is nine years, one month. AKX has paid or incurred fees of $17,677 for store # 14-206 for eleven months and $10,909 for store # 14-207 for eleven months. The annualized totals would be $19,150 and $11,818, respectively. Defendants therefore owe MMI $168,529 in future royalties for store # 14-206 and $107,307 in future royalties for store # 14-207, a total of $275,836 in future royalties.

COUNT VI

ATTORNEY FEES UNDER FRANCHISE AGREEMENT

40.      MMI hereby incorporates paragraphs 1 through 39 of the Verified Complaint as if each were fully set forth herein.

41.      Paragraphs 16.7 and 17.8 of the Franchise Agreement expressly provide that MMI is entitled to its attorney's fees and costs incurred in enforcing the rights it is enforcing in this Complaint.

42.      The Court should grant MMI its attorney's fees and costs.

13

## PRAYER

WHEREFORE, MMI prays that the Court enter preliminary and permanent injunctions as requested herein and in MMI's Motion for a Preliminary Injunction, filed herewith, enjoining the Defendants from violating their post-termination obligations to MMI, ordering that MMI may recover its damages, attorney's fees and costs as requested above, and ordering such other relief as may be proper.


Dated:  January 31, 2006

*Allan P. Hillman*

ALLAN P. HILLMAN
U.S. District Court Bar No. 119
**Shipman & Goodwin LLP**
One Constitution Plaza
Hartford, CT  06103-1919
(860) 251-5000
ahillman@goodwin.com

Attorney for Plaintiff

425995 v.01

14

## VERIFICATION OF COMPLAINT UNDER PENALTY OF PERJURY

STATE OF MARYLAND

                                        SS:

COUNTY OF HOWARD

Andrew M. Friedman, being first fully sworn, deposes and states under penalty of perjury that he is the Vice-President and General Counsel of MaggieMoo's International, LLC ("MMI"); that, as such, he is authorized to make this oath and verification; that, in his capacity, he is familiar with MMI's business operations, including its business dealings and its relationship with its franchisees generally and with Defendants in particular, that he has read the foregoing Verified Complaint; that he knows the contents thereof to be true of his own personal knowledge, and that, as to the allegations contained in the Verified Complaint which are made upon information and belief, he believes them to be true.

Dated: January 30, 2006

_____
Andrew M. Friedman
Sr. Vice President - General Counsel
MaggieMoo's International, LLC
10025 Governor Warfield Parkway
Suite 301
Columbia, MD 21044